## NICHOLS & CO. et al. v. SECRETARY OF AGRICULTURE.

### No. 3747.

Circuit Court of Appeals, First Circuit.

July 9, 1943.

504

For former opinion, see 131 F.2d 651.

Edward C. Park, of Boston, Mass. (Withington, Cross, Park & McCann, of Boston, Mass., of counsel), for petitioners.

Robert L. Pierce, Sp. Asst. to Atty. Gen., Thurman Arnold, Asst. Atty. Gen., Kenneth L. Kimble, Sp. Asst. to Atty. Gen., and Robert H. Shields, Sol., Department of Agriculture, and Charles W. Bucy, Atty., Department of Agriculture, both of Washington, D. C. (James C. Wilson, Sp. Asst. to Atty. Gen., of counsel), for respondent.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

This court handed down an opinion in Nichols & Company et al. v. Secretary of Agriculture on November 19, 1942 (1 Cir., 131 F.2d 651). On the basis of the testimony presented to a master and a master's report, the Secretary of Agriculture concluded that Nichols & Company and Nichols & Company, Inc., were guilty of violating certain provisions of the Commodity Exchange Act, 49 Stat. 1491, 7 U.S.C.A. § 1 et seq. He ordered that the registration of Nichols & Company as a futures commission merchant be suspended for a period of ninety days. He determined that Nichols & Company, Inc. refused access to records required to be kept open in violation of Section 4i; that through the partnership, its agent, it took the other side of customers' trades in violation of Section 4b(D), and that the partnership offset orders of some customers against the orders of other customers in violation of Section 4b(D).

We determined in our opinion that the Secretary could not attribute the wrongs of the corporation to the partnership and, therefore, insofar as the order sought to punish the partnership for corporate wrongs it was invalid. We affirmed the Secretary in his conclusion that the partnership was guilty of off-setting, set aside the Secretary's order and remanded the case for further proceedings not inconsistent with our opinion.

Nichols & Company filed a petition for rehearing on the question of whether it was guilty of violating the off-setting provisions of the Act. We invited the government to reply and a memorandum was filed by it. Thereafter we granted the petition for rehearing limiting it to the single question of whether the partnership was guilty of off-setting. Briefs were submitted and oral arguments were heard during the May session.

When this case was first decided the present issue did not loom large in the arguments of the parties. Since that time, however, we have had the benefit of ample discussion on the question.

The evidence on this point indicates that Nichols & Company would ordinarily execute customers' orders in the following manner: Wells, who was the floor broker for the partnership, would have two orders in hand; an order to buy and an order to sell the same future at the same price. In most cases one side, the purchase or sale, was given to another exchange member for execution and Wells executed the other side. It frequently resulted that Wells made the trade with the member who had been given the opposite side. The Secretary found, however, that "every such trade was made by outcry in the ring and the two brokers who had partnership orders to purchase and sell did not always make the trade with each other". In the opinion we characterized the participants in these trades as "friendly brokers". Nichols & Company has taken the position all along that the statute was aimed at bucketing and that transactions which took place on the floor of the Exchange were not prohibited under the Act. We disagreed with this contention and stated that off-setting has a broader signification than bucketing. We are still of this view. That is to say, we believe that off-setting may take place not only in the office of the broker but also on the Exchange floor.

A further contention is made, however, that the Secretary found that every trade was made by public outcry and that there-

fore he did not find that Nichols & Company had engaged in any collusive practice in order to stifle competition. When the opinion was first written I was of the view that there was something objectionable in the practice of two brokers executing opposite sides of customers' trades, knowing the origin of the trades. Without casting any aspersions upon the honesty of Nichols & Company, I took the position that inherent in such a practice was the possibility of stifling competition; that it was fraught with danger to the best interest of the customers and that since the statute was remedial we should interpret it in a manner consistent with the best interest of the public. This despite the fact that the Secretary did not make any finding that Nichols & Company through its brokers did a dishonest act.

■ Upon fuller consideration on rehearing, my brethren think that in arriving at a definition of the offense of offsetting our starting point should be, namely, that the matching of opposite buying and selling orders by a futures commission merchant in his office is off-setting within the meaning of the statute, as well as quite possibly being a form of "bucketing"; that in the absence of any statutory definition or illuminating legislative history as to the meaning of off-setting, we should look to the nature of the transaction admittedly comprehended by the term. The effect of matching orders in the office is that they are not offered openly and competitively on the market, which was the customer's rightful expectation, and the customer does not obtain an exchange contract as a result of such matching. But the result of the practice carried on by Nichols & Company was that buying and selling orders met on the exchange, as two orders must necessarily meet to consummate any trade. Since the Secretary of Agriculture made a finding that all the trades were executed by public outcry and in the ring, it cannot be said that the orders were matched with the object or result of avoiding open and competitive bidding. The customers received exchange contracts.

■ My brethren are of the view that the Secretary has shifted from his original position. They say that in his decision finding the partnership guilty of off-setting the Secretary seemed to be of the view that Nichols & Company was guilty of off-setting merely because it was the futures commission merchant employed in the execution of the orders on both sides of the trade; that the "off-set" was the meeting of the particular two orders in the resulting trade. After reciting the facts he stated: "Both brokers were acting for the partnership, which leaves it in the position of handling both sides of a trade. Although it has put the trade through the ring, it has filled orders of two customers by causing them to offset each other." At the rehearing, however, the Secretary argued that the futures commission merchant may properly appear on both sides of the trade provided there is an open and competitive offering; but that as a matter of law there can be no open and competitive offering where it is known by the two brokers, or perhaps by one of them, that the two orders had been placed in their respective hands by the same futures commission merchant. The government did not satisfactorily explain how the state of mind of the brokers—which the Secretary in his opinion did not seem to regard as a decisive factor—could affect the quality of the transaction as off-setting. In the opinion of my brethren the government's view on rehearing results in an over-refined definition of off-setting hardly justified by the vague statutory language "to fill such order by offset against the order or orders of any other person". They are of the opinion that the fact that there is a possibility that brokers may engage in a collusive practice when they both know the origin of the trade, is not a basis for characterizing as "off-setting" all transactions where two friendly brokers are used.

While I still feel that there lurks in the practice above described the possibility that customers will not be fully protected, I am satisfied to go along with my brethren in their conviction that neither the statutory language nor the legislative history supports our original interpretation of the term off-setting.

Therefore, an order will be entered setting aside the Secretary's order dated December 29, 1941.