Harry C. DANIELS, d/b/a Harry C. Daniels and Co., Petitioner,

v.

UNITED STATES of America and Ezra Taft Benson, Secretary of Agriculture, Respondents.

No. 11613.

United States Court of Appeals Seventh Circuit.

March 14, 1957.

Rehearing Denied April 2, 1957.

David F. Root, Leonard Hoffman, Morris, Ill., Root, Hoffman & Malmquist, Morris, Ill., of counsel, for petitioner.

Donald A. Campbell, Atty. U. S. Dept. of Agriculture, J. Stephen Doyle, Jr., Neil Brooks, Attys. U. S. Dept. of Justice, Washington, D. C., for respondents.

Before DUFFY, Chief Judge, and FINNEGAN and LINDLEY, Circuit Judges.

DUFFY, Chief Judge.

This is a proceeding to review the validity of an order of the Judicial Officer[1] of the United States Department of Agriculture issued under the Packers and Stockyards Act, 1921 as amended 7 U.S.C.A. § 181 et seq. As petitioner was respondent in the administrative proceedings it may avoid confusion to refer to him in this opinion as the respondent, in spite of the fact that he is the Petitioner in the proceedings before this Court.

The Director of the Livestock Division, Agricultural Marketing Service, United States Department of Agriculture, initiated an order of inquiry as to certain practices of respondent, who, doing business as Harry C. Daniels and Co. is registered with the Secretary of Agriculture as a marketing agency to buy and sell livestock on a commission basis at the St. Louis National Stockyards, National Stockyards, Illinois. By engaging in the business of a marketing agency under the Act, respondent is required to comply with the regulatory requirements applicable to that business.

After notice, a hearing was held before a hearing examiner who issued a proposed order. Thereafter, a final order was issued by the Judicial Officer, acting for the Secretary of Agriculture. The Judicial Officer made findings of fact and conclusions of law. He ordered respondent to cease and desist from 1) engaging in the practices and devices found, specifically, to be in violation of the Act and the Regulations, and 2) from violating a prior cease and desist order issued on October 5, 1953 against the respondent. It was also ordered that respondent keep such records and memoranda as will fully disclose all transactions involved in his business under the Act. In addition, the respondent's registration as a marketing agency, was suspended for a period of four months. However, the order of suspension was stayed pending the outcome of this petition for review.

For the past twenty-five years respondent has been engaged in the livestock commission business, and he has operated under his trade name of Harry C. Daniels and Co. at the St. Louis National Stockyards for more than twenty years. Respondent's gross sales exceed $5,000,000 annually. His customers are primarily small farmers residing in six states in the broad area around East St. Louis, Missouri.

---

1. The Judicial Officer acted for and upon behalf of the Secretary of Agriculture pursuant to authority delegated to him.

There is no dispute that in the period from October 26, 1953 through August 27, 1954, on 115 separate days, respondent drew a total of 272 livestock drafts aggregating $352,900.54 on his shippers' proceeds bank account. It also is admitted that he endorsed each of said drafts by signing, without any prior authorization, the names of the payees thereon. He then deposited the drafts so endorsed in his personal account in another bank. Respondent remitted the balance of the proceeds to such shippers by checks drawn on his personal account. Respondent also admits that all such payments to shippers should have been by draft on his shippers' proceeds bank account.[2]

Respondent points out that during the audit period, he issued 18,057 shippers' proceeds drafts. He claims that of the 272 drafts in question, 42 were, in fact, payable to respondent under different business names which he used, and that such livestock was to that extent sold for his own personal account. Respondent argues the sanctions imposed were not warranted or justified by the relatively few infractions of the Act and the Regulations. Respondent refers to such violations as trivial irregularities. Respondent also emphasizes that none of his customers lost any money because he remitted by check instead of using drafts on his shippers' proceeds bank account. Respondent explains that the procedure was followed in many instances in order to correct errors that were found in the drafts as drawn.

The Judicial Officer found that from November 1, 1953 to August 31, 1954, respondent assessed and collected unfair and unreasonable feed and shed pen charges from shippers whose livestock he sold on a commission basis by deducting from the proceeds received by him amounts for feed charges where such feed was not supplied, and for feed charges greater than were actually supplied. He also found respondent deducted for shed pen charges in cases where the livestock was not yarded in shed pens, and where the period during which the stock occupied the pens was different than that represented by the shed charges which respondent deducted. A specific overcharge of $2,176.64 for corn for hog feed was found. The Judicial Officer also found that favored treatment "with respect to feed and shed pen charges was accorded to consignments of cattle which respondent owned or in which he had a financial interest." The respondent failed to comply with the request of the Livestock Division to refund overcharges to the shippers.

The Judicial Officer also found that during the period May, 1954 through January, 1955, respondent "failed to furnish reasonable selling services at the stockyard in connection with cattle consigned to him for sale on a commission basis, * * *." However, the suspension of respondent's registration was based upon the improper shippers' proceeds transactions and on improper feed and shed pen charges.

In arguing the decision of the Judicial Officer was harsh and the penalty excessive, respondent cites twenty-four cases which involved marketing agencies, and which were decided by the same Judicial Officer. In only eleven of these was the registration suspended, and in all but two of the eleven, the suspension was held in abeyance. Respondent insists that the decision of the Judicial Officer herein will put him out of business permanently.

The improper handling and use of the shippers' proceeds is plainly contrary to the Act, 7 U.S.C.A. §§ 205, 208 and 213(a), and of the regulations (9 CFR § 201.40–201.42.) The argument that there is no evidence of any particular shipper not being paid, is not

---

2. All Commission firms are not required to use a shippers' proceeds bank account. However, pursuant to an order issued upon behalf of the Secretary of Agriculture dated October 5, 1953, respondent was required to use such an account, and withdrawals therefrom were not permitted except in strict compliance with the terms of that order.

controlling. It is the duty of a regulatory agency to prevent potential injury by stopping unlawful practices in their incipiency. Proof of a particular injury is not required. Federal Trade Commission v. Raladam Co., 316 U.S. 149, 152, 62 S.Ct. 966, 86 L.Ed. 1336; Fashion Originators' Guild of America v. Federal Trade Commission, 312 U.S. 457, 466, 668, 61 S.Ct. 703, 85 L.Ed. 949.

■ The Packers and Stockyards Act provides for both civil and penal liability for violations of its provisions. The order herein invokes only civil administrative remedies. The suspension of respondent's privilege to trade as a cattle dealer in the St. Louis National Stockyards is an exercise of a power granted to the Secretary of Agriculture to assure a proper adherence to the provisions of the Act. Cella v. United States, 7 Cir., 208 F.2d 783, 789; Nichols & Co. v. Secretary of Agriculture, 1 Cir., 131 F.2d 651, 659.

Respondent's arguments that the sanctions imposed were excessive would have more force if the violations found by the Official Officer were a first offense. However, the record shows that this is the third violation by respondent with respect to improper handling and use of shippers' proceeds. On April 16, 1945, respondent entered into a stipulation in which he "admitted violating the act and the regulations issued pursuant thereto during the year 1944 by using proceeds received from the sale of livestock consigned to him for sale on a commission basis for purposes of his own and purposes other than the payment of lawful marketing charges and the remittance of net proceeds to shippers." Respondent, in that matter, stipulated to a cease and desist order.

On October 5, 1953, after a hearing, the Judicial Officer found that respondent had violated the stipulation which he entered into on April 16, 1945. Again unauthorized withdrawals and extensions of credit were found which created shortages in respondent's shippers' proceeds account. About the only defense respondent made was that the violations were unintentional. The Judicial Officer did not suspend respondent's registration as a marketing agency, but again ordered respondent to cease and desist from the violations found, and to maintain thereafter a shippers' proceeds account in strict conformity with § 201.42 of the Regulations under the Act. It was only three weeks after the entry of that order when respondent again began to violate the Act and the Regulations with reference to his shippers' proceeds account.

■■ It is our view, and we so hold, that on the record as a whole, substantial evidence supports the findings of the Judicial Officer, and that his findings are sufficient to support the order issued by him. The Administrative decision as to the remedy should be sustained unless the remedy selected has no reasonable relation to the practice found to exist. Great Western Food Distributors, Inc., v. Brannan, 7 Cir., 201 F.2d 476, 484. In view of respondent's previous violations, the order, including the sanctions, should be approved.

There remains for consideration respondent's earnest request that this matter be remanded to the Agency for the purpose of receiving additional evidence. Respondent's present counsel asserts that much evidence was available at the time of the hearing which, for some reason unknown to him, was not there presented.

■ A proceeding may be remanded to the Administrative agency for the purpose of receiving additional evidence only if, *inter alia*, "there were reasonable grounds for failure to adduce such evidence before the agency * * *." It is also provided that the respondent must show that such additional evidence is material, and that there were reasonable grounds for failure to adduce such evidence before the agency. 5 U.S.C.A. § 1037(c).

The evidence which respondent seeks to introduce has, with a few exceptions, been previously adduced in the Admin-

istrative hearing in the same or in a different form. In a large measure, this evidence would be cumulative. But of controlling importance is the fact that respondent has admitted many of the charges which alone would have justified the suspension of his registration. It is difficult to understand how any such additional evidence would change the result.

The petition for review is

Denied.