**CAPITAL PRODUCE COMPANY, INCORPORATED, Petitioner,**

v.

**UNITED STATES of America; Clayton Yeutter, Secretary, U.S. Department of Agriculture, Respondents.**

No. 90–1732.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 9, 1991.

Decided April 19, 1991.

As Amended June 4, 1991.

Stephen Donald Langhoff, argued (Bret S. Wacker, Langhoff & Wacker, P.C., on brief), Baltimore, Md., for petitioner.

Jeffrey Alan Knishkowy, argued (James Michael Kelly, Associate Gen. Counsel, Raymond W. Fullerton, Asst. Gen. Counsel, Margaret M. Breinholt, Deputy Asst. Gen. Counsel, Office of the Gen. Counsel, U.S. Dept. of Agriculture, on brief), Washington, D.C., for respondents.

Before MURNAGHAN and NIEMEYER, Circuit Judges, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.

MURNAGHAN, Circuit Judge:

Capital Produce Company, Inc. (Capital) has petitioned for review of the Administrative Decision and Order of the Judicial Officer, Donald Campbell, of the United States Department of Agriculture rendered on February 5, 1990. The Judicial Officer ruled that Capital violated Section 2(7) of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a, *et seq.*, by causing or permitting a substitution in the contents of a load or lot of a perishable agricultural commodity after it had been officially inspected for grading and certification. The Judicial Officer, acting on an appeal from the decision of August 17, 1989 by Administrative Law Judge James Hunt, further found that the violation was willful, flagrant and serious, although he specifically found the violation was not intentional, and ordered a suspension of petitioner's PACA license for forty-five days.

The case began on June 17, 1988 when a Disciplinary Complaint was filed by the Fruit and Vegetable Division, Agricultural Marketing Service, U.S. Department of Agriculture (USDA) alleging violations of Section 2(7) of the PACA, 7 U.S.C. § 499b(7). The complaint charged that on May 21, 1987, a load of mixed fruits and vegetables was federally inspected prior to shipment to the Baltimore City Jail, and that different produce was substituted for the lettuce, onions and oranges which were to be delivered to the jail, and that such substitution was a willful and flagrant violation of the PACA.

Petitioner generally denied the allegations of the complaint, and the matter first came on for hearing before Administrative Law Judge James Hunt on May 2 and May 5, 1989 in Baltimore, Maryland.

Following the hearing, the parties filed briefs. On August 17, 1989, the ALJ filed his Decision and Order in which he found that Capital had violated Section 2(7) of the PACA by substituting the lettuce and onions (although not oranges), but that the violation was neither willful nor intentional. As sanction, he ordered only that the facts and circumstances of the decision be published.

The Department of Agriculture appealed to the Judicial Officer, arguing that the ALJ had wrongly concluded that the oranges were not substituted, that the violation was willful and flagrant, and that Capital's PACA license should be suspended for ninety days. On February 5, 1990, the Judicial Officer rendered his decision, amended the ALJ's holding, finding in effect for the Department of Agriculture and ordering that Capital's license be suspended for forty-five days. He did so by equating "careless disregard" with "willful."

Capital timely filed a Petition for Review on March 2, 1990.

I.

*The Legal Standard*

The Perishable Agricultural Commodities Act, 7 U.S.C. § 499a, *et seq.*, prohibits a PACA licensee from substituting uninspected produce for produce which has been officially inspected for grading and certification. Section 2(7) of the PACA provides:

It shall be unlawful in or in connection with any transaction in interstate or foreign commerce ...

(7) For any commission merchant, dealer, or broker, without the consent of an inspector, to make, cause, or permit to be made any change by way of substitution or otherwise in the contents of a load or

lot of any perishable agricultural commodity after it has been officially inspected for grading and certification, but this shall not prohibit resorting and discarding inferior produce.

Section 8 of the PACA, 7 U.S.C. § 499h, provides that the USDA may sanction a violator by suspending its license for up to ninety days for a violation, and may revoke a license if the violation is repeated or flagrant.

The Administrative Procedure Act, 5 U.S.C. § 558(c) provides that a registrant's license can be suspended only if the violation is willful, or if, before the institution of agency proceedings, the licensee has been given both a) written notice of the facts or conduct which may warrant the suspension and b) an opportunity to achieve compliance. No evidence was presented, and the USDA does not contend, that it gave Capital any prior warning that its conduct was illegal or could cause or permit a violation of the PACA to take place. All parties have conceded that, in order for suspension to be valid, the USDA had to prove that Capital willfully violated the PACA.

In *Hutto Stockyard, Inc. v. USDA*, 903 F.2d 299 (4th Cir.1990), we established a standard for determining willfulness for the purpose of suspending a license under § 558(c) of the Administrative Procedure Act, 5 U.S.C. § 558(c). In *Hutto*, the licensee allegedly violated a provision of the Packers and Stockyards Act, prompting the USDA to commence a license suspension action. As in this case, the USDA did not give notice of the claimed violation. Instead, the USDA commenced a license suspension proceeding arguing the violation was "willful." In overturning the Judicial Officer's decision suspending the license, the *Hutto* court established the definition of "willfulness" for administrative actions:

> "[W]illfulness" for purposes of Section 558(c) means "an intentional misdeed or such gross neglect of a known duty as to be the equivalent thereof."

*Id.* at 304 (quoting *Capitol Packing v. United States*, 350 F.2d 67, 78–79 (10th Cir.1965)). "A less stringent definition

may collide with the requirements of administrative due process and would betray the plain meaning of the word." *Id.*

The USDA has argued in its brief that the decision in *Hutto* is wrong.[1] The USDA seeks to assert that *Hutto* is wrong because: 1) it wrongfully relied upon *Capitol Packing Co. v. United States*, 350 F.2d 67 (10th Cir.1965); and 2) the court misunderstood the Supreme Court's decision in *Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973). However, in light of the rule of interpanel accord, uniformly followed in the Fourth Circuit, *Hutto* is immune from attack at the panel level. A departure amounting to conflict with extant authority would have to be shown to justify our failure to assign precedential value to a clearly controlling case. *See North Carolina Utilities Comm'n v. FCC*, 552 F.2d 1036, 1044–45 (4th Cir.1977) (rule of interpanel accord serves the purpose of allocating decisionmaking power between coequal panels subject to reversal by the Court of Appeals *en banc*); *Busby v. Crown Supply, Inc.*, 896 F.2d 833, 840–41 (4th Cir. 1990) ("In this circuit ... customarily a panel considers itself bound by the prior decision of another panel, absent an *en banc* overruling or a superseding contrary decision of the Supreme Court.").

The USDA has asserted that the *Hutto* court misconstrued the Supreme Court in *Glover* when it concluded that *Glover* "concerned the level of conduct necessary to warrant suspensions under the Packers & Stockyards Act in a case in which the notice requirement of Section 558(c) of the APA had been satisfied." *Hutto*, at 304. By maintaining that the *Hutto* court's conclusion that *Glover* applies when the APA notice has not been met is misguided and incorrect, the USDA has sought action at the panel level we cannot properly undertake.

Willfulness requires that the context in which the violation occurred be considered. *United States v. Murdock*, 290 U.S. 389, 54

[1]. The USDA minces no words, labelling *Hutto* as "misguided and incorrect," "misplaced," and "mistaken." It has requested that we "reconsider the standard adopted by the *Hutto* panel."

S.Ct. 223, 78 L.Ed. 381 (1933); *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). And the plain meaning of a willful act is one that is done "deliberately," *McBride v. United States*, 225 F.2d 249 (5th Cir.1955), *cert. denied*, 350 U.S. 934, 76 S.Ct. 306, 100 L.Ed. 816 (1956), and is voluntary as distinguished from "accidental." *Eastern Produce Co. v. Benson*, 278 F.2d 606 (3d Cir.1960).

In *Hutto*, this court held that, when the notice requirements of the APA have not been satisfied, then the level of conduct required to satisfy the APA willfulness requirement is that of "an intentional misdeed or such gross neglect of a known duty as to be the equivalent thereof"—the standard previously adopted by the Tenth Circuit in *Capitol Packing Co. v. United States*. Undaunted, the USDA has argued that the Fourth Circuit should not have followed *Capitol Packing* because of *Glover*, and because other circuits have adopted a negligence standard for "willfulness" under the APA. In addition, the USDA has sought to argue that we should reconsider *Hutto* and replace the "gross neglect" standard with a mere negligence standard. The attempt not only contradicts a rule of precedence. It would make superfluous the APA willfulness requirement and the differential sanctions that derive from different levels of culpability that the act contemplates.

The Third Circuit in *Eastern Produce* specifically rejected the notion that willfulness and neglect are to be equated. Moreover, the USDA has argued the equation of negligence and willfulness in the face of authority to the contrary:

Petitioners assert that the record does not support a finding of willfulness and that the Judicial Officer's conclusion to this effect is inconsistent with his finding of neglect on the part of the petitioners. A fair reading of the Decision and Order rendered by the Judicial Officer indicates that this argument is in great measure semantical. The Decision states: "At the least, underpayment to the shippers involved herein, including Peninsula, in many transactions over a five-month period demonstrates such neglect of the requirements of the act as to constitute willful violations thereof. We conclude that Eastern's willful failures to account truly and correctly and to make full payment promptly to shippers in the many transactions involved herein constitute repeated and flagrant violations of Section 2 of the act." This is not equation of neglect and willfulness but, on the contrary, a finding, although perhaps unartfully phrased, that notorious neglect of explicit provisions of law may be evidence of willfulness.

*Eastern Produce Co. v. Benson*, 278 F.2d at 609.

The *Hutto* court noted that the USDA's Judicial Officer whom it was reversing admitted that he was willing to "infer" intentional conduct and knowledge of unlawfulness simply to satisfy "reviewing judges who may dislike [his] hard-nosed sanction policy." *Hutto*, at 304–05, n. 8. The same Judicial Officer, Donald Campbell, in the instant case stated that severe sanctions, including license suspensions, are appropriate whenever there is a "serious violation," and he further asserted that the USDA's administrative officials would only commence formal actions if they consider a violation "serious." But assuming is not proving. The approach is worrisome in a case in which the Judicial Officer gives little deference to the findings of an ALJ a) regarding whether an intentional violation has been proved or b) regarding an appropriate sanction.

*The Facts of The Present Case*

█ Under *Hutto*, in order to uphold the Judicial Officer's suspension of Capital's license, the record must contain substantial evidence that Capital committed such a gross neglect of its duty as to permit the inference that Capital acted intentionally. No such substantial evidence exists in this record. The arguments that the USDA has made have been that substantial evidence exists that Capital failed to watch employees load particular orders; failed to instruct its and Seaboard's (Capital's owner's brother's company which shared the space) drivers as to which particular brand of

produce to load in filling an order; and failed to tell employees not to use inspected produce for other orders. From those, the USDA has argued that the Judicial Officer could properly have found "lax operating procedures" which constitute a "careless disregard of statutory requirements."

Yet there has been no explanation as to how Capital's failure to give express direction not to use inspected produce for orders other than the jail actually caused the alleged substitution to occur, or to explain in what respect such action was grossly negligent under the circumstances. Rather, the Judicial Officer and the USDA simply have inferred from the fact that a single substitution occurred at all that the violation was a willful violation. The USDA presented at the hearing only the testimony of the two inspectors and the jail personnel who ordered and received the produce. The evidence showed only that a substitution occurred. Although Capital's actions may have been culpable, and its management procedures were not as tight as they should have been, either something more was needed to establish an intentional or willful violation, or Capital should have been put on notice of what it faced a substantial penalty for.

Accordingly, the evidence either does not contain substantial evidence that Capital willfully violated the PACA, or sufficient notice was not afforded. Therefore, the license suspension must be set aside.

## II.

■ The attempt to justify the sanction imposed by the Judicial Officer as minor does not convince us:

> I have imposed a lesser suspension than I would otherwise have imposed because the violations occurred only with respect to a tiny fraction of respondent's business. Respondent did not sell any inspected produce except the produce delivered to the Baltimore City Jail once a week, on those weeks when respondent was the low bidder. Accordingly, the sanction is less severe than if the violations had occurred with respect to re-

spondent's total or major business activities.

Opinion of Judicial Officer.

The 45–day suspension may destroy or seriously hamper its relationships with its customers, who depend upon daily service. The Judicial Officer has conceded that Capital was unaware that its procedures permitted a substitution to occur. The Judicial Officer found that: "[E]vidence is lacking to show that respondent authorized or approved the substitution."

Following the example of *Farrow v. USDA*, 760 F.2d 211 (8th Cir.1985), we have decided simply to set aside the suspension portion of the sanction. In *Farrow*, the court also found that a violation occurred, but that it was a non-intentional and non-flagrant violation.

The judgment is, accordingly,

REVERSED.