**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 22 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TERRENCE E. MURPHY, M.D.,

Petitioner,

v.

DRUG ENFORCEMENT
ADMINISTRATION,

Respondent.

No. 96-9507
(DEA No. 94-19)

**ORDER AND JUDGMENT**[*]

Keith A. Ward and Craig A. Fitzgerald of Tilly & Ward, Tulsa, Oklahoma, for Petitioner.

John C. Keeney, Acting Assistant Attorney General; Theresa M.B. Van Vliet; Velina Consuelo Underwood, Department of Justice; Dennis F. Hoffman, Chief Counsel, Drug Enforcement Administration, Washington, D.C.

Before **SEYMOUR, BRORBY** and **KELLY**, Circuit Judges.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Appellant Terrence E. Murphy, M.D., appeals the Drug Enforcement Administration's revocation of his Drug Enforcement Administration Certificate of Registration and the denial of any pending applications for renewal. *See Terrence E. Murphy, M.D.; Revocation of Registration*, 61 Fed. Reg. 2841 (1996). Dr. Murphy asserts the decision was not in accordance with law because: the Drug Enforcement Administration's interpretation of "falsified" is erroneous, he was entitled to an opportunity to achieve compliance with statutory and regulatory requirements, and the Drug Enforcement Administration's decision was arbitrary, capricious, and not supported by substantial evidence.

I.    **BACKGROUND**

Since August 1988, Dr. Murphy has practiced medicine in Oklahoma. From July 1986 to June 1988, Dr. Murphy practiced in Alabama and Florida. On June 20, 1988, the Alabama State Board of Medical Examiners filed an administrative complaint against Dr. Murphy with the Medical Licensure

Commission of the State of Alabama. The complaint charged Dr. Murphy with, *inter alia*, prescribing controlled substances to persons for other than legitimate medical purposes, knowingly permitting the dispensation of controlled substances from his medical office while he was absent from the state, refusing to submit to a blood and urine drug screening test, and having had his staff privileges at a Florida hospital removed on grounds related to medical incompetence, moral turpitude, or drug or alcohol abuse. In October 1988, by which time Dr. Murphy had ceased practicing in Alabama and moved to Oklahoma, he entered into a stipulation and consent order with the Alabama State Board in which he admitted prescribing controlled substances to the individuals named in the complaint but denied that any of the prescriptions were for other than legitimate medical purposes. Dr. Murphy and the Board also agreed Dr. Murphy refused to submit to a requested drug screening without the advice of counsel, but that he later did so with negative results. Dr. Murphy neither admitted nor denied the remaining allegations, and the Board agreed to disposition of the matter by the Alabama Medical Licensure Commission "without the necessity of making any further findings of fact or adjudication of facts with respect to these allegations."

On October 26, 1988, the Alabama Medical Licensure Commission entered a consent order, which order was based on the facts as set forth in the

administrative complaint and the stipulation. The Commission fined Dr. Murphy $500, suspended his Alabama license for one year, and stated that thereafter his license would be on indefinite probation. Because Dr. Murphy had no intention of returning to Alabama, he did not contest the results of these proceedings.

In September 1990, the Florida Department of Professional Regulation filed an administrative complaint against Dr. Murphy, charging him with violating a Florida statute by having a license to practice medicine revoked, suspended, or otherwise acted against by the licensing authority of any state, namely Alabama. A formal administrative hearing was held, at which Dr. Murphy contested the substantive basis for the Alabama allegations, asserting the settlement there reached was merely one of convenience submitted to upon advice of the Oklahoma medical licensing authorities. However, he admitted violating the Florida statute at issue through entry of the Alabama stipulation and consent order. The hearing officer noted the dearth of factual findings supporting the Alabama charges and stated:

> Not being confident of the nature of the underlying facts in the violations [Dr. Murphy] has been accused of in Alabama and given the willingness of that jurisdiction to allow [Dr. Murphy] to deny any wrongdoing from a factual point of view as a means to dispose of their case, the reasonable disposition of the present action would be by the imposition of an administrative fine.

The Florida Board of Medicine accordingly fined Dr. Murphy $500. It

-4-

additionally ordered that if Dr. Murphy reactivated his Florida license,[1] it would be placed on probation with terms and conditions to be set by the Board.

On October 24, 1988, Dr. Murphy submitted himself to the jurisdiction of the Oklahoma Board of Medical Licensure and Supervision. The Oklahoma Board granted Dr. Murphy an Oklahoma Supervised Medical Doctor Certificate on a five-year probationary status with numerous terms and conditions. In January 1990, the Board granted Dr. Murphy's application for reinstatement as a licensed physician and surgeon and placed him on probation for three years. On May 24, 1990, the Oklahoma Board issued an order restoring an unrestricted medical license to Dr. Murphy, and "set aside and held for naught" the probation.

In June 1990, Dr. Murphy completed an application for registration with the Oklahoma State Bureau of Narcotics and Dangerous Drugs Control that contained questions inquiring whether "a previous registration held by the applicant [had ever] been surrendered, revoked, suspended [or] denied," and whether the applicant had "ever been physiologically or psychologically addicted

---

[1] At the time of the Florida proceedings, Dr. Murphy was living and practicing in Oklahoma. His Florida license had been inactive since December 1989 due to his failure to renew it.

to controlled dangerous substances." Dr. Murphy answered "no" to both questions.

In August 1990, the Oklahoma State Bureau of Narcotics and Dangerous Drugs Control issued an order to Dr. Murphy to show cause why it should not deny his application, referencing his prior Oklahoma probation, the Alabama suspension and probation, a brief voluntary entry into a Florida drug rehabilitation program, and his negative answers to the questions quoted above. Dr. Murphy and the Bureau entered into a stipulation wherein, solely because of the prior probationary status of his Oklahoma medical license, the Bureau denied his registration for a period of three days. The Bureau did not find Dr. Murphy had abused or been addicted to controlled substances, or that he had provided untrue answers on the application. It is noteworthy that to date Oklahoma authorities have made no allegations that Dr. Murphy has in any way abused his medical license or his authority to write prescriptions.

The instant action centers on Dr. Murphy's registration with the Drug Enforcement Administration.[2] Dr. Murphy obtained a Drug Enforcement

---

[2] The Controlled Substances Act, as amended by the Dangerous Drug Diversion Control Act of 1984, Pub. L. No. 98-473, title II, § 511, 98 Stat. 2073, requires every person who dispenses or distributes any controlled substance to

Administration Certificate of Registration in 1984, and filed a renewal application in December 1990. Question 2(b) of the renewal application asked:

> *Has the applicant* ever been convicted of a crime in connection with controlled substances under State or Federal law, or ever surrendered or had a Federal controlled substance registration revoked, suspended, restricted or denied, or *ever had a State professional license or controlled substance registration revoked, suspended, denied, restricted or placed on probation*?

(Emphasis added.) Dr. Murphy's renewal application answered "no." Dr. Murphy's mother, rather than Dr. Murphy, filled out the application. At a 1994 administrative hearing, she stated her main concern in completing the application was timeliness. Dr. Murphy had already signed the form while blank, and apparently there was little discussion or attention given to the application. The administrative law judge found this inattention "was the predominant reason for the wrong statement, and [Dr. Murphy] 'should have known' of the inaccuracy."[3]

---

obtain a certificate of registration from the Attorney General. 21 U.S.C. §§ 822(a), 823(f) (1994). The Attorney General has delegated authority regarding such registrations to the Drug Enforcement Administration. *See Humphreys v. Drug Enforcement Admin.*, 96 F.3d 658, 661 (3d Cir. 1996) (citing 21 U.S.C. § 824 (1994); 28 C.F.R. § 0.100(b) (1995)).

[3] Dr. Murphy argues he suffers from a reading and learning disability, which prevented him from properly understanding the question and resulted in the inaccuracy. However, we accept the administrative law judge's finding that the inaccuracy resulted from Dr. Murphy's failure to devote proper attention to the application, rather than his disability.

In November 1993, after renewing Dr. Murphy's 1991 certificate, the Drug Enforcement Administration issued an order to show cause why his registration should not be revoked and any pending applications be denied. The Drug Enforcement Administration proffered two grounds for such action: (1) Dr. Murphy materially falsified his 1990 registration application by denying he had ever had a state professional license or controlled substance registration suspended, restricted or placed on probation, *see* 21 U.S.C. § 824(a)(1) (1994 & Supp. 1997), and (2) his continued registration would be inconsistent with the public interest, *see* 21 U.S.C. §§ 823(f), 824(a)(4) (1994 & Supp. 1997).

A formal hearing was held before an administrative law judge who found Dr. Murphy's negative answer to question 2(b) constituted a material falsification, although his continued registration would not be inconsistent with the public interest. The administrative law judge recommended the Drug Enforcement Administration issue Dr. Murphy a formal reprimand, but permit him to retain his registration.

Both the Drug Enforcement Administration and Dr. Murphy appealed the decision to the Deputy Administrator of the Drug Enforcement Administration. *See* 61 Fed. Reg. 2841, 2842. Like the administrative law judge, the Deputy

-8-

Administrator found Dr. Murphy materially falsified his renewal application. *Id.* at 2845. Furthermore, although he agreed with the administrative law judge's factual findings, he felt registration of Dr. Murphy with the Drug Enforcement Administration would be contrary to the public interest. *Id.* at 2845-2847. The Deputy Administrator sanctioned Dr. Murphy substantially beyond that recommended by the administrative law judge, revoking his Drug Enforcement Administration Certificate of Registration and denying any pending applications for registration. *Id.* at 2847.

## II.    ANALYSIS

Dr. Murphy attacks the Deputy Administrator's finding he materially falsified his application, the finding his registration would be inconsistent with the public interest, and the severity of the sanction. Our standard of review is limited. We may set aside the Deputy Administrator's determination only if it is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with law. 5 U.S.C. § 706(2) (1994); *Rapp v. United States Dep't of Treasury*, 52 F.3d 1510, 1514-15 (10th Cir. 1995). Under the arbitrary, capricious, or abuse of discretion standard we may not substitute our own judgment for that of the agency; rather, "we must uphold the agency's action if it has articulated a rational basis for the decision and has considered relevant

factors." *Colorado Dep't of Soc. Servs. v. United States Dep't of Health & Human Servs.*, 29 F.3d 519, 522 (10th Cir. 1994); *Northwest Pipeline Corp. v. Federal Energy Regulatory Comm'n*, 61 F.3d 1479, 1486 (10th Cir. 1995). Evidence is substantial "if it is enough to justify, if the trial were to a jury, refusal to direct a verdict on a factual conclusion." *Rapp*, 52 F.3d at 1515.

Furthermore, "'where Congress has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy "the relation of remedy to policy is peculiarly a matter for administrative competence."'" *Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 185 (1973) (quoting *American Power & Light Co. v. SEC*, 329 U.S. 90, 112 (1946)). Accordingly, our review of the Drug Enforcement Administration's choice of remedy is equally deferential; we may set it aside only if it is unwarranted in law or without justification in fact. *Id.* at 185-86.

A.    Material Falsity

28 U.S.C. § 824(a)(1) authorizes the Drug Enforcement Administration to suspend or revoke a controlled substance registration upon a finding that the registrant has materially falsified a registration application. Dr. Murphy argues the Drug Enforcement Administration's decision to revoke his registration on the

grounds that he materially falsified[4] his application was not in accordance with law because the agency applied an erroneous interpretation of "falsified." The Drug Enforcement Administration interpreted "falsified" to include both falsities of which Dr. Murphy knew, and those of which he should have known. 61 Fed. Reg. 2841, 2844. Dr. Murphy argues the statute authorizes sanction only if he had actual knowledge his application contained false statements, which knowledge he vigorously disclaims. He makes the somewhat inconsistent claims that he did not read question 2(b), which his mother incorrectly answered, and that his reading and learning disability prevented him from properly understanding the question.

The parties dispute the standard of review governing our interpretation, and application, of § 824(a)(1)'s reference to "falsified." The Drug Enforcement Administration asserts our determination of the appropriate reading is governed by *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and its progeny, such as *Rapp*, 52 F.3d 1510. Under that standard, we must give considerable deference to an agency's interpretation of a statute it is charged with administering if the statute is silent or ambiguous with respect to a

---

[4] Dr. Murphy does not contest the materiality of his negative answer.

-11-

specific issue; our review is limited to determining whether the agency's construction of the statute is reasonable. *Chevron*, 467 U.S. at 843-44; *Rapp*, 52 F.3d at 1518. Dr. Murphy, however, claims our review is *de novo*. He reasons that deference to an agency's statutory interpretation is appropriate only where the agency has particular expertise concerning the matter or terms interpreted, or where Congress has delegated to the agency the task of interpreting or elaborating on the statute. *See Cellwave Tel. Servs., L.P. v. Federal Communications Comm'n*, 30 F.3d 1533, 1536-37 (D.C. Cir. 1994). Here, he asserts, the Drug Enforcement Administration has no special expertise as to what constitutes a "falsified" application, and Congress has not delegated to the Drug Enforcement Administration the authority to elaborate on or interpret the meaning of the term "falsified."

However, we find this debate to be immaterial. Even were we to engage in *de novo* review, we would uphold the agency interpretation and resulting decision. Dr. Murphy had a responsibility to ensure his signed application was correct in all material respects prior to its submission to the Drug Enforcement Administration. The Drug Enforcement Administration relies heavily on the truthfulness of registrants, *see Bobby Watts, M.D.; Revocation of Registration*, 58 Fed. Reg. 46995 (1993), and Dr. Murphy cannot escape his duty of accuracy and honesty

-12-

through the pen of another.  We agree § 824(a)(1) references both those falsities of which registrants know and those of which they should know.  In the instant case it is undisputable that Dr. Murphy should have known the correct answer to question 2(b) was "yes."  Accordingly, we affirm the Drug Enforcement Administration's finding Dr. Murphy materially falsified his application.[5]

Dr. Murphy further contends that, even if he materially falsified his application, 5 U.S.C. § 558(c)(2) (1994) prevents the Drug Enforcement Administration from revoking his registration without providing him an opportunity to repair the application, which it did not do.  In pertinent part, § 558(c) provides:

> Except in cases of willfulness or those in which the public health, interest, or safety requires otherwise, the withdrawal, suspension, revocation, or annulment of a license is lawful only if, before the institution of agency proceedings therefor, the licensee has been given ...
>
> ....
>
> (2)  opportunity to demonstrate or achieve compliance with all lawful requirements.

---

[5] Dr. Murphy also asserts the Deputy Administrator's finding that he materially falsified his application is not supported by substantial evidence. However, this argument is premised on the assumption "falsified" as used in § 824(a)(1) does not include falsities of which Dr. Murphy should have known. Because we have held to the contrary, this argument too fails.

The Drug Enforcement Administration retorts that Dr. Murphy's incorrect response was willful, and therefore § 558(c) does not afford him an opportunity to achieve compliance prior to revocation of his license.

The Deputy Administrator found Dr. Murphy's material falsification was willful because "he acted with 'careless disregard' for ... statutory and regulatory requirements when he submitted his ... renewal application with the incorrect response to question 2(b)." *Terrence E. Murphy, M.D.*, 61 Fed. Reg. at 2845. However, "careless disregard" is not the proper test for willfulness under § 558(c). Rather, in the Tenth Circuit, willfulness for purposes of § 558(c) means "an intentional misdeed or such gross neglect of a known duty as to be the equivalent thereof." *See Capitol Packing Co. v. United States*, 350 F.2d 67, 78-79 (10th Cir. 1965) (examining a precursor statute to § 558(c)); *see also Hutto Stockyard, Inc. v. United States Dep't of Agriculture*, 903 F.2d 299, 304 (4th Cir. 1990) (quoting *Capitol Packing*). This is a more stringent standard than mere negligence or "careless disregard." *See Capitol Produce Co. v. United States*, 930 F.2d 1077, 1079-80 (4th Cir. 1991); *Hickey v. Dep't of Agriculture*, 1993 WL 128889, at *4 (No. 91-70169) (9th Cir. Apr. 23, 1993).

Nonetheless, we too find Dr. Murphy's conduct was willful. *See United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994) (appellate court can affirm district court on grounds not relied upon by the district court). By failing to give proper attention to his registration application, Dr. Murphy grossly neglected his duty to complete it truthfully and accurately. Given the various actions taken against his medical licenses and registrations in three states, it is inconceivable that Dr. Murphy would not have known the correct answer to question 2(b) was "yes" had he taken the time to review it. Accordingly, § 558(c) did not entitle Dr. Murphy to an opportunity to correct his application.

### B.    Public Interest

As we discuss in part II.C., *infra*, Dr. Murphy's material falsification of his application is itself sufficient grounds for revocation of his Drug Enforcement Administration registration. Accordingly, we need not, and therefore do not, address whether the Deputy Administrator was correct in finding Dr. Murphy's registration to be inconsistent with the public interest.

### C.    Sanction

Finally, Dr. Murphy claims the Drug Enforcement Administration's choice of remedy is far too harsh and therefore should be set aside. However, Congress

-15-

has specifically authorized the Drug Enforcement Administration to revoke the registrations of registrants who submit materially false registration applications. 21 U.S.C. § 824(a)(1). In light of the importance both Congress and the Drug Enforcement Administration place on truthfulness by applicants seeking to handle controlled substances, *see id.*; *Bobby Watts, M.D.*, 58 Fed. Reg. at 46995, and the deference we must accord the agency's chosen remedy, *see Butz*, 411 U.S. at 185-86, we cannot say the Drug Enforcement Administration was unjustified in revoking Dr. Murphy's registration for falsely stating he had never had a state medical license or registration revoked, suspended, denied, restricted, or placed on probation. Accordingly, we will not overrule the agency's choice of sanction.

However, after thorough review of the record, we do note that the sanction is, on the facts of this case, troublesomely severe.[6] Accordingly, as have other courts before us when faced with similar concerns, we suggest the Drug Enforcement Administration give careful consideration to any new applications by Dr. Murphy seeking registration with the agency. *See, e.g.*, *Shatz v. United States*

---

[6] We note in passing that the Deputy Administrator's analysis finding Dr. Murphy's continued registration to be contrary to the public interest is somewhat questionable.

*Dep't of Justice*, 873 F.2d 1089, 1092 (8th Cir. 1989); *Sokoloff v. Saxbe*, 501 F.2d

571, 576-77 (2d Cir. 1974).

**Entered for the Court**

**WADE BRORBY**
United States Circuit Judge