**TRI–COUNTY WHOLESALE
PRODUCE CO., INC.,
Petitioner,**

v.

**U.S. DEPARTMENT OF AGRICULTURE
and United States of America,
Respondents.**

**No. 86–1139.**

United States Court of Appeals,
District of Columbia Circuit.

Argued March 9, 1987.

Decided July 7, 1987.

Stephen P. McCarron, Silver Spring, Md., for petitioner.

Aaron B. Kahn, Atty., Dept. of Agriculture, with whom James Michael Kelly, Associate Gen. Counsel and Raymond W. Fullerton, Asst. Gen. Counsel, Dept. of Agriculture, Washington, D.C., were on the brief, for respondents.

Before WALD, Chief Judge, EDWARDS and GINSBURG, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

In a disciplinary proceeding brought by the Department of Agriculture, the Secretary of Agriculture determined that petitioner, Tri-County Wholesale Produce Co., Inc., violated section 8(b) of the Perishable Agricultural Commodities Act 7 U.S.C. § 499a, et seq. ("PACA"), by continuing to employ a "restricted individual" without posting the required bond and obtaining

the approval of the Department of Agriculture. The Secretary revoked petitioner's license to deal in perishable agricultural commodities. We affirm that decision.

## I.

Congress enacted PACA in 1930 in an effort to assure business integrity in an industry thought to be unusually prone to fraud and to unfair practices. A later Congress summarized the purpose of the Act succinctly:

[PACA] was enacted in 1930 for the purpose of providing a measure of control and regulation over a branch of industry which is engaged almost exclusively in interstate commerce, which is highly competitive, and in which the opportunities for sharp practices, irresponsible business conduct, and unfair methods are numerous. The law was designed primarily for the protection of the producers of perishable agricultural products—most of whom must entrust their products to a buyer or commission merchant who may be thousands of miles away, and depend for their payment upon his business acumen and fair dealing—and for the protection of consumers who frequently have no more than the oral representation of the dealer that the product they buy is of the grade and quality they are paying for. (S.Rep. 2507, 84th Cong., 2nd Sess. 3 (1956)).

As this court has stated previously, "the goal of [PACA is] that only financially responsible persons should be engaged in the businesses subject to the Act." *Finer Foods Sales Co., Inc. v. Block*, 708 F.2d 774, 782 (D.C.Cir.1983), *citing Zwick v. Freeman*, 373 F.2d 110, 117 (2d Cir.), *cert. denied*, 389 U.S. 835, 88 S.Ct. 43, 19 L.Ed.2d 96 (1967), *quoted in Marvin Tragash Co. v. United States Dep't of Agric.*, 524 F.2d 1255, 1257 (5th Cir.1975). To this end, PACA requires dealers in perishable agricultural commodities to obtain licenses from the Secretary of Agriculture.

Dealers are required to pay accounts promptly, correctly, and in full. 7 U.S.C. § 499b. The Department of Agriculture can suspend or revoke the license of a dealer who fails to comply with these requirements. 7 U.S.C. § 499h(a). PACA also provides an administrative procedure to resolve payment disputes between dealers and producers. 7 U.S.C. § 499f. This procedure may result in a reparation award against a dealer that is found to be in default on a disputed obligation. 7 U.S.C. § 449g.

The license of a dealer who does not pay a reparation award is automatically suspended. 7 U.S.C. § 499g(d). Furthermore, an individual responsible for a dealer that does not pay a reparation award may not lawfully be employed by any other dealer licensed under PACA, unless the employing dealer obtains the approval of the Secretary of Agriculture and maintains a surety bond as assurance that it's business will be conducted in accordance with PACA. 7 U.S.C. § 499h(b).

## II.

A license to do business under PACA was issued to Robert A. Ferwerda, doing business as Four Seasons Wholesale Produce, on November 23, 1979. The license terminated in November 1981 when Four Seasons failed to pay the annual license fee. Between December 1981 and August 1982, USDA issued six reparation awards against Robert and Four Seasons. He failed to pay these awards, and therefore became ineligible to be employed by any PACA licensee without special approval for two years from the date of the last reparation award.

In August 1981, Robert was hired by Tri-County Wholesale Produce Co., Inc., which was licensed under PACA and owned by Arend Ferwerda, Robert's father. In February 1982, after several of the reparation awards had been issued against Robert, the Secretary of Agriculture informed Tri-County that it could not employ Robert unless it posted a bond, in an amount to be set by the Department of Agriculture. The Secretary also notified Tri-County that it could jeopardize its license if it continued to employ Robert without posting the bond and obtaining the approval of the Department after 30 days from the receipt of the notification letter. Various correspondence passed between

Tri-County and the Department between February and June 1982 regarding the setting of a bond and the status of Robert Ferwerda.

In a letter to the Department dated June 4, 1982, Arend Ferwerda represented that Tri-County had not employed Robert since March 25, 1982. In September 1982, the Department set the amount of the bond at $125,000 and emphasized once again that Tri-County could endanger its license by employing Robert without posting the bond and obtaining the approval of the Secretary. Tri-County did not post the $125,000 bond.

In June 1983, the Department filed an administrative complaint against Tri-County, charging that the firm had employed Robert Ferwerda from January 1982 to the present, despite the Department's February 1982 warning, and despite Tri-County's failure to post the $125,000 bond. Tri-County answered the administrative complaint later the same month and again asserted that it had not employed Robert, within the meaning of PACA, since March 25, 1982. Tri-County claimed that Robert's status since March 25, 1982, had been that of an independent contractor to, not an employee of, the company.

In January 1984, Tri-County amended its answer to the June 1983 administrative complaint to assert for the first time, as defenses, that the amount of the surety bond was excessive, and that it was set in an arbitrary and capricious manner.

At a hearing before an Administrative Law Judge (ALJ), numerous witnesses testified with respect to Robert Ferwerda's relationship to Tri-County after March 25, 1982. These witnesses testified that Robert had, on specific occasions known to them, purchased produce, solicited business, and accepted deliveries on behalf of Tri-County. He answered Tri-County's telephone and frequented its premises. Other evidence revealed that Robert was still covered by the firm's health insurance policy. The ALJ, however, concluded that Tri-County had intended to terminate Robert's employment on March 25, 1982, and that any subsequent contacts were minimal. Nonetheless, the ALJ issued a cease and desist order that prohibited Tri-County from hiring Robert to haul produce, answer telephones, or work in the office.

Both parties appealed the decision to the Judicial Officer of the Department of Agriculture. Upon reviewing the evidence presented at the administrative hearing, the Judicial Officer found that Tri-County had not in fact terminated Robert Ferwerda's employment on March 25, 1982. The Judicial Officer found instead that Tri-County's "termination" of Robert, and his status as an "independent contractor," were cosmetic, and that he had continued to function as an employee of Tri-County. Finally, the Judicial Officer noted that Tri-County's defenses regarding the amount and setting of the bond should have been raised in the appropriate forum when the bond was first set in September 1982, not more than 15 months later in the instant proceeding. The Judicial Officer revoked Tri-County's license for continuing to employ Robert Ferwerda in violation of PACA.

### III.

Tri-County maintains that it can properly challenge the manner and amount of the bond set by the Department of Agriculture in the context of this disciplinary proceeding to revoke or suspend its license. Tri-County argues that it had a "right to refrain from challenging the bond at the time it was set and to trust that any proceeding the Agency might initiate would provide a forum in which it could assert its rights to a fair bond." Brief for Petitioner at 22.

The weakness of this argument is apparent. For a period of several months prior to the Department's determination of the amount of the bond it would require as a condition for approving Tri-County's employment of Robert Ferwerda, the firm continued to employ him despite the fact that PACA clearly prohibited such employment in the absence of a bond. The period in question is from February 19, 1982, when the Department notified Tri-County that it was not to employ Robert without obtaining permission and posting a bond, until September 24, 1982, when the Department set the bond at $125,000. Tri-County would thus be equally in violation of the

Act if the subsequent bond had been set at the lower amount and by the different procedures to which the company claims it was entitled. Any defect in the amount of, or procedures later used to set, the bond does not enable Tri-County to avoid liability for the several months of its non-compliance before the bond was set.

PACA is clear in this regard: "Except at the approval of the Secretary, no licensee shall employ any person ... against whom there is an unpaid reparation award issued within two years." 7 U.S.C. § 499h(b). Tri-County's violation began, therefore, when it continued Robert Ferwerda in its employ after notification by the Secretary that he was a restricted person, without having gotten permission to rehire him. We need not determine, therefore, whether Tri-County might have challenged the amount of or the procedures for setting the bond when the Secretary determined that the amount of the bond should be $125,000. That was not until September 1982, long after the violation had begun. It is immaterial whether Tri-County would have been required to initiate a challenge to the bond or could have rehired Robert at that time and awaited enforcement by the Secretary. It did neither: in simple defiance of the statute, it retained Robert in its employ before the amount of the bond or the procedure for setting it could possibly have been the source of Tri-County's grievance.

### IV.

Tri-County argues that the procedures and standards for setting bonds are substantive rules of general applicability, and are thus required to be published in the Federal Register. 5 U.S.C. § 552(a)(1)(D). Tri-County, however, can claim no prejudice based on non-publication in the Federal Register of rules relating to the bonding requirement, for the same reason that it cannot here upset its license revocation based on a claim that those rules are substantively defective. Again, it violated the Act by employing Robert Ferwerda before the bond was an issue.

This point is slightly different than the one made by the Judicial Officer below, *viz.*, that even if publication were required, Tri-County received actual notice of the significant factors to be considered in setting the bond in the Department's February 16, 1982 letter and received actual notice of the Department's internal instructions for making bond amount determinations at the hearing below. The latter point is weak and comes too late, while the former point is accurate but immaterial. Even if Tri-County did not have actual notice of the factors that the Department of Agriculture would consider in setting a bond amount, it was not at liberty to continue employing Robert Ferwerda. As of the time it began to violate PACA, it was at most entitled to know the factors on which the Department would base its decision (which the Department in fact told it in the February 16 letter), so that it could make a calculated estimate of the probability of success on the merits if it decided to keep Robert in its employ and pin its hopes on a later challenge to the factors used in setting the bond amount. (As it turns out, Tri-County is not challenging the factors that the Department used to set the bond.)

Tri-County also argues that the Department of Agriculture failed to give it sufficient prior warning and notice of what was expected of it, so that any ensuing violation could not be willful. Tri-County seems really to mean here that the Department did not say precisely what it meant by "employment" and thus left it the option, in good faith, of relating to Robert as an "independent contractor." The Act on its face indicates that the statutory term "employment" is to be given a broad reading, indeed to include "any affiliation." 7 U.S.C. § 499a(10). We need not decide whether an independent contractor relationship constitutes such an "affiliation," however. As we have seen, there was more than enough evidence to sustain the finding of the Judicial Officer that Tri-County continued actually to "employ" Robert Ferwerda.

The order of the Judicial Officer is,

*Affirmed.*