873 F.2d 1294
 Dawn SIMPSON, Verla Van Velkinburgh, Sharon Collman, Jane
Doe, Teri Trosper, Sandra Foley, Oregon Human Rights
Coalition, on behalf of all themselves and on behalf of all
others similarly situated, Plaintiff-Appellee,
v.
Leo HEGSTROM, individually and in his official capacity as
Director, Department of Human Resources of the State of
Oregon, Keith Putman, individually and in his official
capacity as Administrator, Adult and Family Services
Division of the State of Oregon, Defendant,
and
Otis R. Bowen, individually and in his capacity as
Secretary, United States Department of Health and
Human Services, Defendant-Appellant.
 No. 87-3507.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 13, 1988.
Decided May 4, 1989.
 
 Mark W. Pennak, U.S. Dept. of Justice, Washington, D.C., for defendant-appellant.
 Timothy P. Baxter, Lane County Legal Aid Service Inc., Eugene, Or., for plaintiff-appellee.
 Appeal from the United States District Court for the District of Oregon.
 Before SCHROEDER, PREGERSON and LEAVY, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 Defendants-appellants Hegstrom and Bowen ("the Secretary") appeal the district court's ruling that the Secretary's interpretation of a regulation implementing the Aid to Families of Dependent Children program (AFDC), Title IV of the Social Security Act of 1935 ("the Act"), was "unreasonable" and therefore invalid. At issue is the effect of one provision of the Act, which imposes sanctions on AFDC recipients who fail to cooperate with a State-run work incentive or "WIN" program, upon the Act's provisions concerning the determination of eligibility and benefit amounts of AFDC applicants. For the reasons discussed below, we affirm the judgment of the district court.
 
 I. BACKGROUND
 
 2
 States administering AFDC are required by statute to determine the eligibility of "assistance units" (the family) for benefits by comparing the unit's net or "available" income to a "need standard" set by the State. 42 U.S.C. Sec. 602 (Supp. III 1985). Roughly speaking, if "need" is greater than available income, the unit is eligible for assistance. The amount of assistance is the difference between income and need.
 
 
 3
 To determine the family's net income, the State must "disregard" certain earned income of AFDC applicants. The relevant provisions, contained in Sec. 602(a), state:
 
 
 4
 A State plan for aid and services to needy families with children must....
 
 
 5
 (7) except as otherwise provided in paragraph (8) ... provide that the State agency--
 
 
 6
 (A) shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children, or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid;....
 
 
 7
 (8)(A) provide that, with respect to any month, in making the determination under paragraph (7), the State agency--...
 
 
 8
 (ii) shall disregard from the earned income of any child or relative applying for or receiving aid to families with dependent children, or of any other individual (living in the same home as such relative and child) whose needs are taken into account in making such determination, the first $75 of the total of such earned income for such month;
 
 
 9
 (iii) shall disregard from the earned income of any child, relative, or other individual specified in clause (ii), an amount equal to expenditures for care in such month for a dependent child ... receiving aid to families with dependent children and requiring such care for such month, to the extent that such amount (for each such dependent child ...) does not exceed $160....
 
 
 10
 42 U.S.C. Sec. 602(a)(7), (8).
 
 
 11
 Under these provisions a State welfare agency must "disregard" child care expenses and other work-related expenses (which have been "capped" at $160 and $75, respectively). See P.L. 97-35, Sec. 2301, 95 Stat. 843 (Aug. 13, 1981). The child care and work expense deductions are referred to as "earned income disregards," or "EID's." By "disregarding" certain classes of income that would otherwise be counted in the eligibility and benefits determinations, more families are deemed eligible for assistance than would otherwise be the case, and their benefits are increased. The EID provisions
 
 
 12
 flow from Congress' recognition that the AFDC system can create a financial incentive not to work.... The EID ... reflected Congress' awareness that because increased income reduces the size of the AFDC grant, members of AFDC families may have little financial incentive to work.
 
 
 13
 Drysdale v. Spirito, 689 F.2d 252, 254 (1st Cir.1982). To counter this "perverse incentive," id. at 255, Congress enacted the EID provisions that exclude from net income child care and other work related expenses.
 
 
 14
 An AFDC applicant or recipient may, however, lose his EID's if he(I) terminate[s] his employment or reduce[s] his earned income without good cause ...
 
 
 15
 (II) refuse[s] without good cause ... to accept employment ... or
 
 
 16
 (III) fail[s] without good cause to make a timely report ... to the State agency of earned income received in such month....
 
 
 17
 42 U.S.C. Sec. 602(a)(8)(B)(i). These provisions (the "disregard sanctions") are the only statutory source for sanctions which deprive persons of their EID's. The parties to this litigation agree that plaintiffs are not subject to this particular sanction.
 
 
 18
 Another part of the AFDC program, Sec. 645(b)(1)(B), permits the State to set up a work incentive or "WIN" program in which the State may require the participation of AFDC recipients. 42 U.S.C. Sec. 645(b)(1)(B) (1982). Congress intended these work programs "to decrease welfare dependency, and [to] emphasize the principle that AFDC should not be regarded as a permanent income guarantee." S.Rep. No. 139, 97th Cong., 1st Sess. 502-503, reprinted in 1981 U.S.Code Cong. & Admin.News 396, 769.
 
 
 19
 Congress also incorporated sanctions for failure to cooperate with WIN programs. Section 602(a)(19)(F) provides that
 
 
 20
 if ... any child, relative or individual has been found by the Secretary of Labor ... to have refused without good cause to participate under a work incentive program....
 
 
 21
 then the standard of need for the assistance unit to which the child, relative or individual belongs will not include the needs of the sanctioned person. (This opinion will refer to the Sec. 602(a)(19)(F) sanction as the "need sanction.") The income of the sanctioned person will still be taken into account for purposes of making the eligibility determination under Sec. 602(a)(7)(A), but the needs of the sanctioned person are not considered. In the context of this case, this means that the income of plaintiffs, caretaker-relatives who have incurred the "need sanction," will be attributed to the needy children they care for in the eligibility determination, but the need standard of the assistance unit containing the child and caretaker relative will not include the caretaker-relative's needs.
 
 
 22
 Plaintiffs in this case (and the class of persons they represent) are caretaker-relatives who have been sanctioned for failure to participate in a State WIN program. They do not dispute the imposition on them of the statutory "need sanction" of Sec. 602(a)(19)(F).[1] They do point out, however, that none of the plaintiffs has performed any of the work-related actions which trigger the "disregard sanction" of Sec. 602(a)(8)(B)(i), supra, a claim defendants do not dispute.
 
 
 23
 Nonetheless, in addition to incurring the "need sanction" of Sec. 602(a)(19)(F) for their failure to participate in the State WIN program, plaintiffs were also deprived of their child care and work-expense EID's. This second set of sanctions was imposed pursuant to federal and State policy which interprets Secs. 602(a)(7) and (8) to require that when an AFDC applicant's needs are no longer taken into consideration in the eligibility determination due to imposition of the "need sanction," the applicant is automatically disentitled to EID's. It is this interpretation which the district court invalidated as inconsistent with the Act.
 
 
 24
 The Secretary's interpretation of the relevant statutory provisions, Secs. 602(a)(7) and (8), derives from his reading of regulation Sec. 233.20(a)(11), which states:
 
 
 25
 For purposes of eligibility determination, the State must disregard from the monthly earned income ... of each individual whose needs are included in the eligibility determination: [Various EID's].
 
 
 26
 45 C.F.R. Sec. 233.20(a)(11) (1986).
 
 
 27
 According to the Secretary, the phrase "whose needs are included in the eligibility determination" dictates that EID's be accorded only to those whose needs are taken into consideration in making the eligibility determination. Thus, he argues, because persons who are sanctioned for failure to cooperate with WINS programs do not have their needs "included in the eligibility determination," the State may not "disregard" such persons' child care and other work-related expenses in determining net income.
 
 
 28
 In this appeal the Secretary argues that the above-described interpretation of the regulation also constitutes the proper interpretation of Secs. 602(a)(7) and (8) of the Act. However, as we explain below, the language of the Act will not bear the interpretation the Secretary seeks to place on it. Thus, the district court was correct in holding that the Secretary's interpretation is at odds with the statute.[2]
 
 II. STANDARD OF REVIEW
 
 29
 "[C]ourts generally will defer to an agency's construction of the statute it is charged with implementing, and to the procedures it adopts for implementing that statute." Heckler v. Chaney, 470 U.S. 821, 832, 105 S.Ct. 1649, 1656, 84 L.Ed.2d 714 (1985); see also Monet v. INS, 791 F.2d 752, 753 (9th Cir.1986). However, courts will overturn an agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. Sec. 706(2)(A) (1982); see also Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1278 (9th Cir.1987) (Secretary must apply proper legal standards). Courts will not defer to administrative interpretations when they are "plainly erroneous or inconsistent with the regulation[s]." Razey v. Heckler, 785 F.2d 1426, 1428 (9th Cir.) (citation omitted), modified, 794 F.2d 1348 (1986); Ruangswang v. INS, 591 F.2d 39, 43 (9th Cir.1978).
 
 
 30
 In the present case, there is some disagreement over the effect of the district court's decision. The Secretary contends that the district court "invalidated" the Department of Health and Human Services' regulations (presumably 45 C.F.R. Sec. 233.20(a)(11)). Plaintiffs, on the other hand, argue that the district court did not "invalidate" any regulations but merely rejected the Secretary's interpretaton of the regulations. The plaintiffs are correct. The district court stated that "[t]he regulation [45 C.F.R. Sec. 233.20(a)(11) ], as interpreted by the Secretary, is invalid." Excerpt of Record (E.R.) at 40 (emphasis added). The court also stated:
 
 
 31
 To the extent the regulation does authorize disallowance of the EIDs challenged here for persons who have not engaged in conduct proscribed by 42 U.S.C. Sec. 602(a)(8)(B), the regulation clearly violates congressional intent.
 
 
 32
 Id. Thus the district court's holding left the regulation intact to the extent that it directs State agencies to accord EID's to AFDC applicants in the eligibility determination. The Secretary has not argued or shown that the district court's decision renders the regulation no longer susceptible of coherent interpretation or application. Therefore, the standard of review to be applied is that appropriate to decisions holding agency interpretations "plainly erroneous or inconsistent with the regulation." Razey v. Heckler, 785 F.2d at 1428.
 
 III. DISCUSSION
 
 33
 The Secretary argues that Secs. 602(a)(7) and (8) together require that work-expense and child care EID's be denied to persons whose needs are not taken into consideration due to imposition of the WIN "need sanction." The Secretary bases this argument on a construction of the statute that parallels his construction of the implementing regulation, 45 C.F.R. Sec. 233.20(a)(11), discussed above.
 
 
 34
 Under the Secretary's construction of the "disregards" provision, Sec. 602(a)(8), supra, the phrase "whose needs are taken into account in making [the eligibility determination under Sec. 602(a)(7) ]" modifies not only "individual" but also "any child or relative applying for or receiving aid...." Thus, if the child's or relative's needs are not taken into account, argues the Secretary, they are not entitled to the EID's. Persons who incur "need sanctions" under the WIN program are therefore not eligible for EID's, according to this interpretation.
 
 
 35
 We reject the Secretary's construction of Sec. 602(a)(8)(A)(ii). The text of the provision clearly separates the phrase "child or relative" from the phrase "any other individual," and imposes the requirement that the person's "needs [be] taken into account" only on the latter. First, the comma following "children" sets off the clause referring to "any other individual" from the clause referring to "child or relative." Second, we treat differently the phrases divided by the disjunctive phrase "or of," in accordance with the principle that "terms connected by a disjunctive [are to] be given separate meanings, unless the context dictates otherwise." Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979). Third, we note the absence of a comma before the phrase "whose needs are taken into account." 42 U.S.C. Sec. 602(a)(8)(A)(ii). Had Congress intended the phrase "whose needs are taken into account" to modify "child or relative" as well as "any other individual," a comma preceeding the phrase would have clearly indicated such an intent. Fourth, in construing a statute courts should give effect, if possible, to every word Congress used, Reiter, 442 U.S. at 339, 99 S.Ct. at 2331, and an interpretation making any phrase surplusage must be disfavored. This principle can be applied to the phrase "child or relative." If, as the Secretary argues, the phrase "whose needs are taken into account" modifies "child or relative," then "child or relative" would be mere surplusage, because the statute would have the same effect if it provided simply that "the State agency ... shall disregard from the earned income of any individual whose needs are taken into account ... [the various EID's]."
 
 
 36
 Thus the Secretary's construction of Sec. 602(a)(8)(A)(ii) is not persuasive. Rather, Sec. 602(a)(8)(A)(ii) requires that the EID's be accorded to any "child" or "relative" applying for or receiving aid (who does not incur the "disregard sanctions" of Sec. 602(a)(8)(B)(i)), because the income of these persons is taken into account even if, due to imposition of a WIN "need sanction," their needs are not.[3]
 
 
 37
 Our interpretation of the statute is strengthened by the fact that Sec. 602(a)(7)(A), which describes the eligibility determination, states that in determining need the State shall take into consideration income and resources not only of a child or relative claiming aid, but also of "any other individual ... whose needs the State determines should be considered in determining the need of the child or relative claiming such aid." As the district court noted, the italicized language means that if a State chooses to include an individual's need in the eligibility determination (i.e., someone other than a relative or child), then the State must also consider that individual's income. Because the purpose of the language is to permit the State to include the needs of certain individuals other than the child or relative, and thereby increase the size of awards made to eligible assistance units, it seems unlikely that it was also intended to exclude EID's and thereby decrease the amount of assistance to households in which caretaker-relatives whose needs are not taken into account incur child care or other work-related expenses in the course of earning income which is attributed to the needy child.
 
 
 38
 Because Sec. 602(a)(8)(A) explicitly refers to the eligibility determination of Sec. 602(a)(7)(A), it is logical to conclude that when Sec. 602(a)(8)(A) refers to "individual[s] ... whose needs are taken into account in making such [eligibility] determination," it, like Sec. 602(a)(7)(A), is referring to individuals, aside from "children" and "relatives" applying for aid, "whose needs the State determines should be considered...." Therefore, the real significance of the phrase "whose needs are taken into account" in Sec. 602(a)(8)(A) is to extend the allowance of EID's to individuals other than needy children and caretaker-relatives whose needs the State chooses to include when determining eligibility for aid under Sec. 602(a)(7)(A).[4]
 
 
 39
 Our interpretation of the Act governs our construction of the regulation implementing the statute. 45 C.F.R. Sec. 233.20(a)(11), supra. The regulation's reference to the earned income of "each individual whose needs are included in the eligibility determination" must mean that if the State chooses to consider the needs of an individual other than a "child" or "relative" in the eligibility determination, it must apply the EID's to reduce that individual's income in determining the assistance unit's net income. Despite the fact that the bare language of the regulation could be read to support the Secretary's contention that EID's are limited to those "whose needs are included in the eligibility determination," such an interpretation is at odds with our interpretation of Sec. 602(a)(8)(A)(ii) of the statute. The district court was therefore correct to hold the Secretary's interpretation of the regulation inconsistent with the Act.
 
 
 40
 In enacting Sec. 602(a)(8)(B)(i), supra, Congress provided explicit directions regarding the imposition of "disregard sanctions." The State may deprive persons of EID's only in the circumstances delineated by the statute. It may be true, as the Secretary argues, that to provide any EID's at all to a person sanctioned under Sec. 602(a)(19)(F) for failure to cooperate with a State WIN program "would defeat the purpose of the ['need'] sanction" of Sec. 602(a)(19)(F). Brief of Federal Appellee at 9 (citing 1986 regulations).[5] Even so, only Congress, and not the Secretary or the court, has the authority to alter the statutory scheme to impose sanctions not currently provided for by the Act. The alleged consistency with existing sanctions of an additional "disregard sanction" for need-sanctioned caretaker-relatives is not sufficient reason to permit the Secretary to exceed his authority under the Act.
 
 
 41
 AFFIRMED.
 
 
 
 [1]
 Plaintiffs work part time. They allege that the WIN "need sanction" was imposed upon named plaintiff Simpson for her failure to attend appointments arranged by the State WIN program, and upon named plaintiff Van Velkinburgh for attending business school full time in addition to working part time
 
 
 [2]
 Plaintiffs originally brought suit against both the State and federal governments, seeking to enjoin enforcement of the policy of denying EID's to "need-sanctioned" persons, and to have the policy declared invalid. The Magistrate granted plaintiffs' motion for summary judgment and enjoined the Secretary and State defendants from denying plaintiffs the EID's. The State, having reached a settlement with plaintiffs on November 13, 1987, is no longer a party. The federal defendants however bring this appeal seeking to reverse the district court's decision
 
 
 [3]
 In the case of the plaintiff class, the income of the caretaker-relative is attributed to the needy child on whose behalf the caretaker-relative seeks aid, even though the caretaker-relative's needs are not taken into account due to imposition of the WIN "need sanction."
 
 
 [4]
 The Secretary invokes Drysdale v. Spirito, 689 F.2d 252, 261 (1st Cir.1982), for the proposition that courts should defer to an agency's interpretation of the statute it administers "where the statute is technical and the agency's interpretation is 'consistent with longstanding administrative practice.' " Brief of Federal Appellee at 23. The Secretary argues that this principle is "fully applicable here." Id. at 24. However, the regulation which the Secretary relies on to justify his position, 45 C.F.R. Sec. 233.20(a)(11), supra, was altered in 1986, and the Secretary admits that the 1986 version differs from that in force in 1981. The 1981 version of the regulation "suggested that a person receiving assistance could be a person other than a persons [sic] whose needs were included in the eligibility determination.... The current [1986] regulations make plain that the disregards are available only to those persons whose needs are taken into account in making the eligibility determination." Reply of Federal Appellee at 11 n. 4. The Secretary does not assert that HHS interpreted the 1981 version of the regulation in the way that the 1986 version attempted to establish. Nor does the Secretary offer any evidence that his interpretation predates 1986. We therefore find no basis for according the Secretary's interpretation of the statute the judicial deference given to "longstanding" agency interpretations
 
 
 [5]
 However, the Secretary's assertion takes no account of the fact that deprivation of the EID's punishes not only the need-sanctioned caretaker-relative but also the needy child on whose behalf the caretaker is applying for aid. Moreover, a person sanctioned under Sec. 602(a)(19)(F) does in fact incur a significant penalty by having his needs removed from the eligibility determination; it is not clear why failure to impose an additional ("disregard") sanction "defeat[s] the purpose" of the WIN "need" sanction