**FARLEY AND CALFEE,
INC., Petitioner,**

v.

**U.S. DEPARTMENT OF
AGRICULTURE,
Respondent.**

No. 90–70274.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 11, 1991.

Decided Aug. 12, 1991.

Con P. Lynch, Douglas, Dickey & Lynch, Salem, Or., for petitioner.

Ellen R. Hornstein, U.S. Dept. of Justice, Washington, D.C., for respondent.

Before ALARCON, FERGUSON and CYNTHIA HOLCOMB HALL, Circuit Judges.

FERGUSON, Circuit Judge:

Farley and Calfee, Inc. (F & C), petitions this court for review of the Department of Agriculture's decision and order finding that it violated the Perishable Agricultural Commodities Act. Specifically, the petitioner disputes the Judicial Officer's reversal of the Administrative Law Judge's decision to backdate its disciplinary order. Backdating the order had the effect of insulating Roy Farley, 100% stockholder and president of Farley and Calfee, Inc., from the Act's sanctions against "responsibly connected" persons. We affirm the Department's decision.

I.

The parties stipulated to all relevant facts in the agency proceedings. F & C was a fruit and vegetable brokerage located in Oregon. It was licensed under the Perishable Agricultural Commodities Act ("PACA" or "the Act"), 7 U.S.C. § 499a et seq., from 1977 until 1986, when its license expired due to failure to pay the renewal fee. During all relevant times, the corporation was owned entirely by Roy E. Farley, Jr., who was a PACA licensee for 41 years.[1]

This case arose out of a series of transactions which occurred between August 1985

and November 1985, in which F & C failed to pay promptly for perishable agricultural commodities it purchased. The total amount which the company failed to pay was $110,128.90, resulting from 51 purchases. The company was not able to make any payments on this debt for another eighteen months.

The company's failure to pay was a result of an economic downturn in the fruit and produce industry in 1985 and 1986. During this time, some of F & C's customers went bankrupt, large grocery stores changed their buying practices, and the company was forced to take a loss on produce it bought which was later declared unfit for human consumption. The cumulative effect of these events was that Roy E. Farley's business, unable to meet its own obligations, failed. Many of the company's debts went unpaid, including those to the fruit and produce suppliers. Although not obligated to do so, Roy Farley withdrew money from his personal savings and pension fund accounts in an attempt to pay off these debts.[2] Of the over $100,000 owed to PACA creditors, he was able to pay approximately $34,000. Farley is now insolvent and his only remaining asset is his residence.

Roy Farley is currently employed by Oregon Onions, Inc., a PACA licensee. Gazelle Farley suffers from cancer. He receives medical insurance through his job, which pays for his wife's medical expenses. In addition, he is repaying a personal loan from Oregon Onions through a deduction from his paycheck.

On November 23, 1987, the United States Department of Agriculture (the "Department") filed a disciplinary complaint against F & C, alleging that the company had violated section 2 of the PACA, 7 U.S.C. § 499b, by failing to make full payment promptly for 51 lots of perishable agricultural commodities. F & C responded that all claims against it had been satis-

---

1. Roy Farley's wife, Gazelle Farley, was an officer of Farley and Calfee, Inc. The parties stipulated that she did not participate in the day-to-day running of the business. Their son, Chris Farley, was the company's vice-president.

2. He obtained approximately $280,000 by liquidating his pension fund and life insurance. The tax penalty for early withdrawal of the pension fund was approximately $110,000.

fied. The Administrative Law Judge ("ALJ") decided the case based on stipulated facts in lieu of a hearing. The ALJ issued an order on August 17, 1989, concluding that F & C had wilfully, flagrantly and repeatedly violated section 2 of the PACA, 7 U.S.C. § 499b. Because the company was no longer a licensee, the sanction imposed was publication of the disciplinary order. *See* 7 U.S.C. § 499h(a).

However, in light of what he believed were mitigating circumstances, the ALJ backdated its order to April 27, 1987, the date on which Roy Farley satisfied the reparation award against him. The effect of the ALJ's action was to allow Roy Farley to continue working for Oregon Onions. Otherwise, the PACA requires that all persons "responsibly connected" with a licensee found to have repeatedly or flagrantly violated section 2 of the PACA be barred from employment with another PACA licensee for at least one year. 7 U.S.C. § 499h(b). The Department appealed this order. On review, the Judicial Officer accepted the ALJ's construction of the facts and discussion of the PACA violation. However, in a decision dated February 21, 1990, he concluded that an order should be published finding that F & C committed flagrant and repeated violations of the PACA and reversed the ALJ's decision to backdate.

F & C timely appeals.

## II.

This court has jurisdiction to hear appeals from final orders of the Secretary of Agriculture. 28 U.S.C. § 2342. However, the scope of our review of administrative decisions is narrow: administrative agency decisions will be upheld unless "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law...." 5 U.S.C. § 706(2)(A); *Simpson v. Hegstrom,* 873 F.2d 1294, 1297 (9th Cir.1989). We may not overturn the Secretary's choice of sanction unless it is " 'unwarranted in law ... or without justification in fact.' " *Butz v. Glover Livestock Comm'n Co.,* 411 U.S. 182, 185–86, 93 S.Ct. 1455, 1458, 36 L.Ed.2d 142 (1973) (quoting *Amer-*

*ican Power Co. v. SEC,* 329 U.S. 90, 112, 67 S.Ct. 133, 146, 91 L.Ed. 103 (1946)). Our review is limited to determining whether the remedy chosen was the result of "an allowable judgment." *Magic Valley Potato Shippers, Inc. v. Secretary of Agric.,* 702 F.2d 840, 842 (9th Cir.1983) (citations omitted).

## III.

The PACA was enacted by Congress in 1930, and has undergone numerous amendments since that time. The Act was aimed at preventing unfair business practices and promoting financial responsibility in the fresh fruit and produce industry. *Tri–County Wholesale Produce v. Dep't of Agric.,* 822 F.2d 162, 163 (D.C.Cir.1987). It requires that all brokers and dealers in perishable agricultural commodities obtain licenses from the Secretary of Agriculture. 7 U.S.C. §§ 499c, 499d.

Section 2 of the PACA defines unfair conduct from which licensees must refrain. 7 U.S.C. § 499b. A specific instance of unfair conduct is the licensee's failure to pay promptly and in full for agricultural purchases. 7 U.S.C. § 499b(4). Violation of the PACA may result in suspension or revocation of a dealer's license. 7 U.S.C. § 499h(a); *Siegel v. Lyng,* 851 F.2d 412, 414 (D.C.Cir.1988). The PACA provides that when a violation is flagrant or repeated, the Secretary may revoke the violator's license. 7 U.S.C. § 499h(a). Here, because F & C had already allowed its license to expire, the Judicial Officer's choice of sanction was to publish the disciplinary order as authorized by the Act. *Id.* F & C does not contest the Judicial Officer's conclusion that it repeatedly and flagrantly violated section 2 of the PACA by failing to pay for 51 lots of agricultural commodities.

However, the Judicial Officer's decision does not affect only F & C. The PACA also temporarily bars the employment in the perishable agriculture industry of those who have been "responsibly connected with" PACA violators. 7 U.S.C. § 499h(b). In pertinent part, the Act states that:

Except with the approval of the Secretary, no licensee shall employ any person, or any person who is or has been responsibly connected with any person—

. . . . .

(2) who has been found ... to have committed any flagrant or repeated violation of section 2

. . . .

The Secretary may approve such employment ... after one year following the ... finding of flagrant or repeated violation of section 2, if the licensee furnishes and maintains a surety bond.... The Secretary may approve employment without a surety bond after the expiration of two years from the effective date of the applicable disciplinary order....

7 U.S.C. § 499h(b). Roy Farley concedes that he was "responsibly connected" with F & C, as defined by PACA. *See* 7 U.S.C. § 499a(9).[3] However, he contends that mitigating circumstances should be considered to relieve him of the Act's employment bar. Therefore, he asks this court to reinstate the ALJ's initial decision to backdate the disciplinary order.

## IV.

■ F & C asks this court to find that the Judicial Officer erred in reversing the ALJ's decision to backdate. However, this court's review is limited to the actions of the Judicial Officer. In another case in which a PACA licensee asked the court to overturn the Judicial Officer's imposition of a stricter sanction than had been imposed by the ALJ, the Fifth Circuit found that it was not authorized to grant reversal given the limited standard of review. *J. Acevedo and Sons v. United States*, 524 F.2d 977, 979 (5th Cir.1975).

> We cannot disturb the action of the Secretary, as accomplished through the judicial officer, so long as the proceedings were properly conducted in accordance with constitutional and statutory standards, unless the judgment is " 'unwar-

ranted in law or ... without justification in fact,' ". . . .

*Id.* (citations omitted). We must reach the same conclusion regarding F & C's request. The company does not allege that the Department committed any constitutional or statutory errors in its consideration of the disciplinary complaint against F & C. Thus, the only question before this court is whether the sanction imposed by the Judicial Officer is legally permissible.

## V.

■ In its review of a sanction imposed by the Secretary, this court is limited to determining "whether, under the pertinent statute and relevant facts, the Secretary made 'an allowable judgment in choice of the remedy.' " *Butz*, 411 U.S. at 189, 93 S.Ct. at 1459 (quoting *Jacob Siegel Co. v. FTC*, 327 U.S. 608, 612, 66 S.Ct. 758, 760, 90 L.Ed. 888 (1946)). Here the sanction imposed was publication of the disciplinary order finding that F & C had committed repeated and flagrant violations of the PACA. Section 8 of the PACA provides that:

> Whenever (a) the Secretary determines, as provided in section 6, that any commission merchant, dealer, or broker has violated any of the provisions of section 2, ... the Secretary may publish the facts and circumstances of such violation and/or, by order, suspend the license of such offender for a period not to exceed ninety days, except that, if the violation is flagrant or repeated, the Secretary may, by order, revoke the license of the offender;

7 U.S.C. § 499h(a). Because F & C had allowed its license to expire, the Judicial Officer could not choose to suspend or revoke its license. Instead, he simply published the disciplinary order. This remedy is clearly authorized by law. *Id.* Because F & C does not dispute the Judicial Officer's factual findings that it committed flagrant and repeated violations of the PACA, we also must find that the sanction was

---

**3.** "Responsibly connected" is defined as: "affiliated or connected with a commission merchant, dealer, or broker as ... (B) officer, di-

rector, or holder of more than 10 per centum of the outstanding stock of a corporation or association." *Id.*

justified in fact. *See Magic Valley*, 702 F.2d at 842.

■ Even if we were to reconsider the factual basis of the Judicial Officer's findings, we would not reach a different decision. It is undisputed that F & C failed to pay promptly, as required by the PACA, for 51 lots of fruit and vegetables. Fifty-one transactions falls plainly within the permissible definition of "repeated." *See generally Zwick v. Freeman*, 373 F.2d 110, 115 (2d Cir.) (rejecting contention that because the 295 unpaid transactions occurred in a short period of time, they should not be considered repeated), *cert. denied*, 389 U.S. 835, 88 S.Ct. 43, 19 L.Ed.2d 96 (1967).[4]

Therefore, we affirm the publication sanction imposed by the Judicial Officer.

## VI.

The strict employment bar imposed on individuals responsibly connected with violators of the PACA has been challenged repeatedly with little success. The courts which have considered this issue have been unwilling to invalidate the statute or to interfere with the Secretary's enforcement of it.

Legislative history indicates that Section 499h(b) was enacted in order to prevent circumvention of the purposes behind the Act by persons currently under suspension or by persons whose licenses had been revoked and who, by the subterfuge of acting as an "employee" of a nominal licensee nevertheless continued in the business.... While admittedly the result Congress desired could be harsh in some cases, we cannot say that

Section 499h(b) is not reasonably designed to achieve the desired Congressional purpose.

*Zwick*, 373 F.2d at 118 (citation omitted). Arguments that the employment bar is contrary to the Due Process Clause of the Fifth Amendment; the Bill of Attainder Clause; the Eighth Amendment's ban on cruel and unusual punishment; and the Fifth Amendment right to earn a livelihood have all proven unsuccessful. *See Siegel*, 851 F.2d at 416–17 (rejecting Due Process Clause and Bill of Attainder challenges); *George Steinberg and Son, Inc. v. Butz*, 491 F.2d 988, 994 (2d Cir.) (same), *cert. denied*, 419 U.S. 830, 95 S.Ct. 53, 42 L.Ed.2d 55 (1974); *Zwick*, 373 F.2d at 118–20 (considering Due Process Clause, Bill of Attainder, Eighth Amendment, and Fifth Amendment arguments); *Birkenfield v. United States*, 369 F.2d 491, 493–95 (3d Cir.1966) (§ 499h(b) does not violate the Due Process Clause).[5]

■ F & C does not raise any constitutional challenges to PACA's employment bar. Rather, it asserts that the Judicial Officer should have examined the impact of this section on Roy Farley before issuing his decision. But the Judicial Officer refused to consider any possible collateral effects of his actions. "Mr. Farley is not a respondent in this proceeding, and the collateral consequences of the order against respondent on responsibly-connected individuals are irrelevant in this disciplinary proceeding involving only the respondent corporation." Decision and Order, PACA No. D–88–509, Feb. 21, 1990. The Department takes the same position here.

---

4. The Department applies a *per se* rule to violations of section 2 of the PACA, all failures to pay promptly are considered flagrant when the circumstances causing the failure to pay are peculiar to an individual respondent. This court need not reach the issue of whether the Judicial Officer properly found that the violations were flagrant. The Act prescribes consequences for violations that are "flagrant *or* repeated." 7 U.S.C. §§ 499h(a), 499h(b)(2). Our affirmation of the finding that the violations were repeated is sufficient.

5. The circuit courts have split, however, on whether the statutory definition of "responsibly connected" is a *per se* rule or simply a rebut-

table presumption. *Compare Veg–Mix, Inc. v. United States Dep't of Agric.*, 832 F.2d 601, 611 (D.C.Cir.1987) (individual may rebut presumption by showing that he or she was not actually at fault or in control of those at fault) *and Minotto v. United States Dep't of Agric.*, 711 F.2d 406, 408 (D.C.Cir.1983) (same) (individual found to be only a nominal officer, thus not "responsibly connected") *with Pupillo v. United States*, 755 F.2d 638, 643–44 (8th Cir.1985) (*per se* rule of accountability) *and Birkenfield*, 369 F.2d at 494 (same). This court need not address this issue because Roy Farley concedes that he was responsibly connected with F & C, as defined by the PACA.

At least one court has agreed with the Department. In *Finer Food Sales Co. v. Block*, 708 F.2d 774 (D.C.Cir.1983), the court rejected the argument that collateral effects should be considered by the Judicial Officer. *Id.* at 782–83. The court noted that its jurisdiction was limited to appeals from a final order of the Department from an aggrieved party. *Id.* at 782 (citing 28 U.S.C. § 2344). "The petitioner, which is a corporation, has not shown how it has been or could be aggrieved by any bar upon the employment of its former president by another licensee." *Id.* The court pointed out that the responsibly connected person, or his new employer, could challenge the effect of the employment bar in another proceeding. *Id.* at 783.

The Secretary's regulations set out the procedure by which the employment bar in § 499h(b) is enforced. *See* 7 C.F.R. §§ 47.47 *et seq.* After an administrative determination that an individual is or has been responsibly connected with a licensee subject to a disciplinary proceeding, the Regulatory Branch of the Fruit and Vegetable Division of the Agricultural Marketing Service of the Department notifies the individual in writing. 7 C.F.R. § 47.49(b). The individual may contest this determination and submit his or her reasons in writing, along with supporting documentation. 7 C.F.R. § 47.49(c). The Chief of the Regulatory Branch will review this documentation and inform the individual in writing of its determination, along with an explanation of its reasons. *Id.* If the individual still disagrees with the finding, he or she may request an oral hearing with a presiding officer of the Agricultural Marketing Service to review the decision. 7 C.F.R.

§ 47.49(d). The presiding officer's decision is then reviewable by the Administrator of the Agricultural Marketing Service, who will issue the final order. *Id.* That order is reviewable by this court. 28 U.S.C. § 2342(2).

If this court will not order the backdating of the Department's disciplinary order, F & C asks, in the alternative, that this case be remanded for a hearing on the question of whether Roy Farley is a responsibly connected individual. The Department responds that Roy Farley has waived his right to a hearing on this issue, and thus a remand order is not an available option. The Department has included in an appendix to its brief copies of letters sent to the entire Farley family notifying them that they had 30 days to contest the determination that they were responsibly connected with F & C. Only Chris Farley responded.

Roy Farley never responded to the Department's notices, and has waived his right under the Secretary's rules to contest the issue of whether he was responsibly connected to F & C. Therefore, this court does not have the power to order a hearing on the issue of whether Roy Farley was responsibly connected with F & C. Additionally, it is not clear that a remand would produce a different result given that Roy Farley has conceded that he was responsibly connected and the Act sets out a mandatory sanction for all persons in his class.[6]

## VII.

The crux of F & C's appeal to this court is a plea for mitigation and leniency. Unfortunately, the PACA and the Depart-

---

**6.** Even if Roy Farley had attempted to contest the Department's determination that he was responsibly connected with F & C, he probably would have failed. While the Circuit of the District of Columbia has allowed some individuals to successfully challenge the Department's determination, those cases present a very different factual situation. In *Quinn v. Butz*, 510 F.2d 743 (D.C.Cir.1975), the court held that an individual who is an officer of a PACA-licensed corporation must be allowed to present evidence that the corporate form was fraudulent, so the officer was not "responsibly connected." *Id.* at 756–60. *See also Minotto*, 711 F.2d at 408–

09 (nominal director's presence at board meetings alone was insufficient to impute personal knowledge of PACA violations). On the other hand, in *Martino v. United States Dep't of Agric.*, 801 F.2d 1410, 1414 (D.C.Cir.1986), the court rejected attempts by two stockholders, each holding over twenty percent of the company's stock, to show that they were not responsibly connected. The court warned that an allegedly responsibly-connected individual had only a limited right to contest his or her proper characterization as a person covered by the PACA definition. *Id.* at 1413.

ment appear to provide little of either. In its disciplinary proceedings, the Department does not consider mitigating circumstances when determining whether a violation of section 2 of the PACA has occurred. *Finer Food,* 708 F.2d at 781–82 ("the Act calls for payments—not excuses"). Similarly, when the PACA provides a choice of sanctions, the Judicial Officer may consider mitigating factors, but the court may not second-guess the remedy finally chosen. *See Melvin Beene Produce v. Agric. Mktg. Serv.,* 728 F.2d 347, 350–51 (6th Cir.1984); *Maine Potato Growers, Inc. v. Butz,* 540 F.2d 518, 524 (1st Cir.1976); *J. Acevedo,* 524 F.2d at 979.

Here, the language of § 499h(b) is strict and speaks in mandatory terms. The Judicial Officer is given no discretion. Even without the severely limited review that this court may give sanctions imposed by the Department, the statute itself provides no opportunity for Roy Farley to escape the mandatory employment bar.

The order of the Department of Agriculture is AFFIRMED.